Ladies and gentlemen, this is Judge Easterbrook. You will hear me but not see me today. We are conducting this argument remotely, and there's always a risk that something will go wrong. Either somebody won't be heard or the video may disconnect. We will take the time needed to make these things work. We've managed to do that in the past, and we can do that without costing any of you any of your time. I will let you know if we need to take a pause for technical reasons. Our first case for argument this morning is in the matter of the Chicago Board Options Exchange antitrust litigation. Mr. Brockett. Thank you, Judge Easterbrook. May it please the Court. This appeal concerns whether the CBOE, despite well-pleaded allegations that the financial products that it designed, administered, and settled were manipulated for over a decade by trading strategies carried out on the CBOE's exchange. The CEA and the Securities Exchange Act are intended to protect investors from precisely this type of manipulation. Nonetheless, the District Court dismissed the claims, holding them insufficiently pled and not plausible, despite a 130-page complaint spelling out in great detail the specific ways in which CBOE caused plaintiff's harm. Now, let me start with the CEA claim. The District Court dismissed the CEA claim on essentially two grounds. First, it said there was a failure to plausibly allege proximate causation. And second, it said there was a failure to allege actual losses. Now, to illustrate why the District Court was wrong on proximate causation, imagine a scenario in which an exchange deliberately ignores 10 years of manipulation. So Mr. Brockett, excuse me, this is Judge Wood. Before you get too far into your scenario, I've been wondering how important it is to your position that the material included in the appendix that you tendered be considered or not. The District Court thought it was not appropriate, so it did not base its ruling, as I understand it, on that material. Yes. So we do believe, Judge Wood, that the complaint adequately alleges loss, actual loss, and I can explain that in some detail. However, we also believe that the court need not pause long on this question because there is a clear path that in the event the court agrees with us on other issues pertaining to the CEA claim, it's easy enough to remand with instructions to allow a motion to amend to add the appendix material, which was attached to a brief below but was not attached to the complaint itself. And so, yes, we do believe we've pleaded in the complaint, but there is an easy path here simply by allowing it to the complaint to be amended to add the material, which even the District Court accepted contained all of the details of the specific transactions that the District Court said was failing, was lacking. Well, the District Court didn't think that, though. The District Court thought that you had not shown the specifics of why the ultimate price that was taken at the end, whether in the capacity as a purchaser or seller of these various instruments, was manipulated. I mean, markets, of course, respond to a great number of real-world activities, too. So the District Court thought that there was a leg missing, basically. Yes, the District Court said that we had not pled the direction of the manipulation, but that's really not entirely accurate. What we did, Your Honor, is that we had detailed models that were described in the complaint, and these detailed models took into account the direction of the manipulation in determining the specific days on which the plaintiffs were injured, what instruments they traded on those days, and we alleged specifically on those days that the plaintiffs traded to their detriment. And the models that were applied to make those determinations that the plaintiffs had traded to their detriment, the models baked in the directionality of the manipulation. We could not make the allegation that we traded to our detriment without knowing the direction of the manipulation. So there was no chart in the complaint that set out the direction of the manipulation on any given settlement day, but we described the models. We described how the models accounted for the direction of the manipulation, and we said we then applied the models to the trading data in this case, and we were able to allege that the manipulation was adverse to our client's position. And we think that was sufficient to allege actual loss under the CDA. Mr. Crockett, could I follow up a little bit on that? As I understand it, you want to pursue a class on behalf of a class that includes everyone who traded in this market over about a 10-year period. Is that right? Well, it's not everyone who traded. It would be everyone who traded and who held to settlement. There are many people who traded, but they didn't hold their instruments to the settlement. Okay, everybody who holds to settlement, okay. But that would seem to include for each day that you say there was manipulation, and I gather that's every settlement day over that 10-year period, that presumably would include people who both were victims of and beneficiaries of the alleged manipulation, right? Yes, there are two theories of harm. One was those who held directly to the settlement, and the other was those who purchased in a market that we allege was impacted because the manipulation had not fully decayed. Let's focus on the folks who held to settlement. Yes. And what concerns me, and I guess concern the district judge, is that I wonder if your reluctance to have alleged the directionality of the manipulation has anything to do with the fact that it was going to help some people who held and hurt others, if you're right about the manipulation. No, Your Honor. We had no qualms about alleging the direction of the manipulation. We did in the given day. And yes, you have in many of these cases, in this case too, you will have plaintiffs who were injured and have plaintiffs who were benefited. They were injured on some trades. They were benefited on some trades. That will be the duty of our expert to be able to articulate a damages model that accounts for the netting of those trades when we get to the stage of class certification. But for purposes of alleging an actual loss, we even went further, and we applied the models to all of our plaintiffs' trades, and we were able to determine they were injured on a net basis. But generally speaking, courts do not look at netting on a motion to dismiss. That's more a damages question. Our burden here is really to show that the named plaintiffs traded in at least one transaction that was to their detriment. And we've alleged dozens of specific transactions that were entered into by the named plaintiffs. I think what Your Honor is identifying very well could be a problem, but it's more a problem when we get to the class certification stage than it is if you think I'm premature on that. Let me ask you another question then about the Exchange Act claim. Section 25B requires bad faith to hold the self-regulatory organization liable. And I will confess to some mystification as to how bad faith metamorphosed in the Bosco opinion to negligence, particularly given not only just the well-understood meaning of bad faith in the law but also some legislative history laid out in the amicus brief indicating a legislative compromise on exactly this issue. So why should we treat this as a—allow, in essence, a negligence claim to go forward? Okay, that's a very fair question, Your Honor, and I appreciate it. I'm glad you think it's fair, Mr. Brockett. Okay. Well, Bosco, which of course is the controlling law in the Seventh Circuit at this time, really set forth three ways to show a bad faith. None of these amount to a near-negligent standard. And I believe the court in Bosco itself even said that it wasn't applying a negligent standard. What Bosco said is essentially the first way is if you have a mandatory duty, plus it's a duty that the exchange should have known was being violated. But you do get into this should-have language. I mean, I'm troubled by the Bosco point as well, and particularly because the facts of Bosco don't seem to be a hard fit for bad faith, but there's language in the opinion that perhaps is dicta, perhaps is unnecessary. But once you start talking about should have known, should have done, that sounds more like a negligence-based standard to me, not an intentional standard. Well, no, I don't think—I mean, I think negligence is do you have a duty? Was there a breach of duty? I'm not sure should have known, Judge Wood, is the same as in the ordinary negligence. Should have known is more as a higher standard. It is a standard that requires that there be some culpability on the part of the actor. But are you saying that in your case, for example, if we took the ostrich approach, are you saying that something like that would fit these facts? I think that— Or is it really relying on this discretionary, non-discretionary line? I think what I'd say is that Bosco did hold that a mandatory duty plus a should have known is the law in this circuit, and it is more than negligence. I believe Bosco itself characterized that as a standard that's higher than negligence. And we believe here a decade of failure in a core area of CBOE's responsibility readily meets the first test in Bosco. This is one issue that the district court did get right. Bosco also applied— Can you give us an example of an enforcement duty that does not involve discretion? I think the one here, I think there's a clear duty on the part of an exchange to maintain an orderly market and to prevent manipulation. That's the first and foremost— That doesn't involve discretionary judgments? It may involve a discretionary judgment about whether they're going to prosecute in any individual cases, but the core duty to maintain an orderly exchange is the first and foremost duty of any exchange. So yes, I believe this was a mandatory duty to prevent manipulation, but there, of course, could have been discretion in individual cases as to how an individual case was going to be handled. But Mr. Brockett, here's what troubles me about that argument. There are many mechanisms that an exchange could use as ways of trying to assure that the market is a market with integrity and so forth. And of course, the CBOE is using some of them. It's not like they just went to sleep for a decade. They aren't doing enough, in your case, historically. And then FINRA comes along and maybe some things change. But surely there's discretion in deciding how much to invest in this market, monitoring what mechanisms seem to you the best ones to use. I see a lot of discretion there, much more than just are we going to prosecute this obvious case of manipulation or not that other case. Well, Your Honor, I think if you look at the CEA itself, it actually mandates that a regulated entity like the CBOE have the capacity and the responsibility to prevent manipulation. It also requires that the CBOE establish, monitor, and enforce rules to prohibit abusive trade practices by third parties. Now, these are duties that are imposed upon the regulated entity by the federal statute itself. And who is supposed to enforce those duties, private parties in this kind of case or the agency? Well, the CEA in Section 25 expressly conferred upon private parties, those who are trading on this exchange, an express cause of action, not only against those who manipulate, but against the exchange itself. So Congress has made that judgment, Judge Wood. Congress has specifically allowed two causes of action, one against the manipulators themselves and another against the exchange, particularly in circumstances where the exchange does not carry out a duty that it's obligated to enforce. I wonder if you could talk a little bit about proximate cause, too, because, of course, the thing that we're carefully not saying that you just alluded to is the fact that there certainly are parties who might be culpable if there was manipulation going on in this exchange. That's namely your Doe defendants, who I assume are back in the district court. I'm not sure if anything's but this is a 54B appeal. So if there was manipulation, then it seems that they were the ones who were doing it, the people who participated in this SOQ process. Well, that's what the district court said, that yes, that the main manipulators or the main cause of the harm were the third party manipulators. But that if you go down that rope, that it's always the case that somebody else is going to be doing the manipulative training, then the exchange is going to avoid CBA liability always because someone else did the manipulative trading. But then why did Congress give an express cause of action against the exchange itself? I mean, proximate causation always contemplates that there could be more than one cause, and Congress specifically gave us a private right of action against an exchange for failing to enforce a duty. If it's the case that the exchange always avoids liability because someone else does the manipulative trading, then there could never be a claim against the exchange. And that whole approach just simply doesn't work. It's inconsistent with the text and purposes of the private cause of action that Congress has conferred upon private parties. Now, with respect to if I could address the issue of speculation, we think, you know, it's a matter of common sense that when you put a cop on the street corner, you can reduce crime. When people know there's an increased chance of getting caught, they curtail their behavior. And certainly here, it's not speculative to allege that if CBOE had been doing its job to prevent manipulation, prices would not have been artificial. Indeed, the deterrent effect of an honest cop on the street is not speculation at all. It's what actually happened in this case. When FINRA started investigating, following this whistleblower complaint, the trading patterns changed was a cop on the street corner enforcing the rules. And so we think that's a very important piece of data in looking at the plausibility of the claim. But our burden here is to allege plausible proximate causation. We're now down to two minutes. So if you want to save time for rebuttal, this is the time. Yes, I had reserved five minutes for rebuttal. And so I think I'll just make one or two more points. Your total is two minutes left. I'm sorry. All right. Well, then I'll stop here and reserve my two minutes for rebuttal. Thank you, Mr. Brockett. Mr. Unikowski. Thank you, your honors. May it please the court. The district court correctly concluded that the plaintiffs failed adequately to allege that the failure to enforce the rules caused the loss. It also ruled that plaintiffs failed to allege actual losses based on their failure to allege the direction of manipulation. We think both those rulings are correct. And we think there's a third independent basis to affirm, which is the failure to adequately plead bad faith on which the district court ruled against us. So let me begin with the first point in which we agree with the district court's ruling, which is that plaintiffs failed adequately to allege that the failure to enforce caused a loss. And plaintiff's counsel said that under our theory, a plaintiff could never successfully allege a claim against an exchange. And we don't think that's the case. We think the district court did not issue such a rule. And instead, it examined the specific facts of this complaint and concluded that they were too speculative to state a claim. And to explain why, I think it's useful just to walk through exactly what it is that plaintiffs are alleging here in terms of causation. So plaintiff's theory of the case is that an unknown John Doe manipulated through an unknown mechanism. Several are posited, but no specific mechanism of manipulation is actually alleged, causing them unspecified damages. So Mr. Unikowski, I understood them to be alleging that the use of this SOQ, the special opening quotation process, given the timing of it and all the rest, was just an open invitation to manipulation, which was indeed accepted by this small number of companies so that they could arrange that this final quote was in the position where they wanted it to be. So if that's true, is that something the exchange should have forbidden the use of that thing? Or should somebody have said you need to design a different way of handling these instruments? So I don't think that's actually plaintiff's allegations for purposes at least of the CEA claim. I mean, the VIX was designed, the settlement process was designed, among other things, well the failure to redesign the VIX or the settlement process is a failure to enforce rules. That's why plaintiff's claim under the CEA has always been premised on the idea that CBO failed to enforce its anti-manipulation rules rather than failing to alter the SOQ. Aren't they almost the same thing though? I mean, the failure, I thought, I mean, trying to see what this failure to enforce the rules is and what rules we're talking about and whether those rules, if fully enforced, would have prevented manipulations on the exchange. But I thought that this SOQ played a central role in it as it unfolded over the years. Well, yes, plaintiffs do allege that there was manipulation during the SOQ, but I think the gravamen of plaintiffs... Mr. Aronofsky, you would help me a lot. I bet you would help my colleagues by using more real words and fewer initialisms. It would make your argument easier to follow. I'm sorry, Your Honor. I'll do that going forward. I think that the district court did not rule that the special opening quotation process, which is the settlement process used to determine the final settlement value of the VIX, I don't think that the failure to redesign that process was a failure to enforce rules in the relevant sense. I think what's claimed as a means of establishing the cause of action under the Commodities Exchange Act is that what SIBO should have done was bring enforcement action that should have investigated, determined that people were engaging in manipulation and punished those people. And that would have served as a deterrent to the John Doe's who allegedly harmed the plaintiffs. And when framed in those terms, I don't think plaintiffs have adequately alleged causation because of the very speculative nature of the allegations. And it's interesting, in plaintiff's counsel's opening remarks, the argument was made that if you put police officers on street corners, crime goes down. Well, maybe that's true at a high level of generality, but I don't think that someone who, you know, one day wakes up in the morning and has a broken window in their house can allege that the failure to put more cops on the street caused their loss. It's very speculative in any particular case to say, well, if, you know, 20 more police officers had been hired, well, yes. What would it take to allege causation sufficiently, in your view, particularly since the 25B cause of action does presume, in essence, a more culpable actor? Yes, that is correct. So there are actually lots of ways I think that one could do it. We don't think that there's any categorical ban. We agree with you with your assessment of the 25B cause of action. So one way to do it, not saying the only way, but one way is what was alleged in the Bosco case, in which the allegation was that there was a specific bad actor in which the exchange failed to enforce its rules, which basically opened and failed to disable that bad actor from engaging in its bad acts, which opened the door for that specific bad actor to continue engaging in its wrongful conduct. That's not what is alleged here. There's no allegation that the John Does who would have been held to have violated the rules are the same John Does, or even though they did the same thing in general. It's quite possible that there was different types of manipulation on different occasions according to the complaint. That's not the only way, though. I think that maybe I can imagine a scenario if there is an allegation that there is some specific conduct and there's a policy of non-enforcement with respect to some specific conduct. Maybe the right allegations in that ballpark would get up a threshold. That's actually not what's alleged here. First of all, there's no specific conduct. Manipulation is just an umbrella term for lots of things. More importantly, plaintiffs actually don't allege that SIBO was derelict in enforcing its rules. To the contrary, they allege that SIBO was enforcing its rules, and that's just a sign that SIBO knew about the manipulation. Instead, plaintiffs are speculating about the incremental marginal effects of additional units of enforcement, not unlike the police officer hypothetical. That, we think, is too speculative to state a claim. There are several issues in the case. If I could just turn to the next issue, unless the panel has questions. We also think the district court independently and correctly concluded that plaintiffs failed to state a claim of causation of law, that they were harmed by the alleged manipulation. What happened here is that plaintiffs filed the first complaint, which the district court dismissed without prejudice, for failure to plead harm. Among other things, the district court pointed out that there's no allegation that the manipulation caused the VIX settlement price, or value, excuse me, to go up or down in general. And so, without an allegation that plaintiff's position was opposite to the direction of manipulation, plaintiffs couldn't plead harm. And then in the second version of the complaint, yes. I can see the conclusion that without a clear direction, and without specification of the affected transactions, the plaintiffs can't plead harm from a particular transaction. But the plaintiffs do allege that the manipulators were doing this to make profits for themselves. And if the manipulators were making more, it ought to follow that other people were making less. I certainly understand that point. And maybe in the aggregate, statistically speaking, one might say that all plaintiffs collectively, statistically suffered harm. But I don't think that's enough to get over the pleading threshold. I think that each individual plaintiff has to show that they state a claim. And I don't think they can say, well, statistically, at least... Do you think that's true under the Commodities Act, as well as under the Securities Exchange Act? There's no special pleading requirement under the Commodities Act, as there is in the Private Securities Litigation Reform Act. That's correct, Your Honor. And we haven't alleged that there's a heightened pleading standard. We agree that the pleading standard from the Iqbal and Twombly case applies. But the relevant statute does say that plaintiffs have to plead loss. So 7 U.S.C. 25b requires, quote, such person's actual losses that resulted from such transaction. And so we think that that statutory element has to be adequately pleaded. And if you can't plead that your actual losses resulted from such transaction, then you haven't stated a claim. And it's not enough to say, well, that collectively among all the plaintiffs and all the accused trades, statistically, at least one of them, or at least some subset resulted in harm, each plaintiff. And if you're just guessing in any individual transaction whether you were harmed, that means you haven't plausibly stated a claim. And, you know, there's some questions in the earlier part of the argument about whether the appendix should be considered. So this court has said that there's an abusive discretion standard of review that's applicable to a district court's decision to exclude material attached to the opposition of motion to dismiss. I think it's very hard to argue on the facts of this case that there is an abusive discretion by the district court. From the district court's perspective, the district court issued a first order dismissing the complaint without prejudice, basically telling plaintiffs what they had to include. And then plaintiffs filed a new complaint, and they didn't include it. And then plaintiffs could have been moved to file an amended complaint, but they needed permission from the court to do that because they'd already filed one amended complaint. And so they decided to short circuit that process and instead attach this material without seeking permission in advance as an appendix to the motion to dismiss. I think it's just very hard to say that the district court abuses discretion in not permitting the plaintiffs to do so. Can I ask you a couple of questions about that? One of them is just that the material in the appendix doesn't seem to me to be so far afield from the material in the amended complaint. We do allow people facing 12b6 type motions to support what they're doing, say, you know, yes, this is a plausible complaint because here are the kinds of facts we're prepared to prove. So I wonder if you could comment on that. And the second thing is just, is it your position that even if we had a particular plaintiff and we knew what the purchase price was and we knew what the sale price was and the person lost money, that there's an additional requirement to show that they lost money because of this manipulation, not because, you know, COVID-19 is raging through the world or, you know, whatever, you know, incidents of the day that might have caused markets to fluctuate up or down? Do we need to keel that part away and get into the manipulation? So let me take both those questions in order. On the first question, I think it's sort of case dependent. I think there's a discretionary component there as to whether a district judge would permit a plaintiff to do that or not. I think the facts of this case are a little bit dismissed without prejudice and invited them to do it. So I think that's maybe a little different from the ordinary case where you just file a complaint and then there's a motion to dismiss saying, oh, it doesn't include this, this, and this. And then in the opposition, you say, well, actually, I could easily have pleaded that. And I think that those were the facts here that led the district court to rule that plaintiffs already had two shots and they weren't going to get a third shot. In response to your second question, yes, I think that the losses do have to be attributable to the manipulation. And that's true for two reasons. First of all, there's a statutory requirement that the losses result from the transaction. And second of all, there's also a separate statutory requirement that a loss is caused by the failure to enforce the anti-manipulation rule. So if the losses weren't caused by the manipulation, it's hard to draw a causal link between the exchange's failure to enforce its anti-manipulation rules and the harm itself. And so I think based on, I'm sorry, Ron. Yeah, no, I was just thinking that's the sort of thing, obviously, it reminds me of lots of antitrust cases, you know, where you need expert testimony to dissect out the contributing factors that lead to a particular loss. But they say they're prepared to do that. Well, I don't think it's, I mean, it's not alleged adequately. I think that if plaintiffs are just not willing to allege the up versus down in their complaint, and I don't want to speculate on the reasons why, Judge Hamilton, the possibility that the class is very broad includes everybody who traded in these derivatives might be one reason. We don't really know why, but whatever the reason, plaintiffs went out of their way in the district court to say they didn't have to include that, and then they say that again on appeal. And the analogy we draw in our brief is to a plaintiff who sues a state under the Dormant Commerce Clause for favoring in-state versus out-of-state businesses and refuses to specify if they're in the state or out of the claim. You can't allege that, then you haven't stated a claim. I don't think it's enough to say, well, we wouldn't have been harmed unless we were out of state, and so you can infer that the allegation is there. I think you have to include it and say that allegation. And if you're not willing to put it in the complaint, then you take the risk that your complaints can be dismissed. And I think that's ultimately the risk that materialized in this case. I'd like to say a word about bad faith, which came up in the first part of the argument this morning as well under the CEA. We're mindful that the Bosco case is a binding precedent of this Court, and a panel can't overrule prior panel precedent. We realize that. But we do think that the Bosco case is distinguishable in its facts, and so it's not necessary to decide whether Bosco got it wrong. The Court can simply say that the standard doesn't apply here. So the Bosco case distinguished between non-discretionary duties and discretionary duties. And in the former case, the Court said you can apply negligence standard. And in the latter case, the Court says traditional bad faith applies. So in the facts of the Bosco case, the rule was a very mechanical rule that merely required certain information be written on the face of certain documents. And I think what the Court was saying was, in that scenario, when this mechanical, obvious, easy-to-enforce rule just isn't being enforced, perhaps an inference of bad faith can be drawn by that. I think this case is worlds apart because there's so much discretion, both at the macro and the micro scale, in policing manipulation. First, at the micro scale, remember that plaintiffs are just alleging that CBOE should have drawn certain inferences from aggregate trading data on certain days. And, you know, CBOE's position is that that aggregate trading data isn't redolent of manipulation. There's perfectly legitimate explanations for that. But so fundamentally, the dispute is whether or not these aggregate data shows on any particular day that manipulation occurred. There's clearly a discretionary component in the decision, first of all, in the decision of what inferences to draw from this aggregate trading data, and second, whether to allocate resources to investigate manipulation on a particular day. And we know, by the way, that plaintiffs actually alleged in the complaint that CBOE was policing manipulation. Plaintiffs say that it wasn't. It was only to small actors and not to big players, even though plaintiffs alleged that Morgan Stanley was the subject of discipline. Plaintiffs said maybe it should have been announced sooner. That's the sort of allegation we get in the complaint. That sounds very discretionary from our perspective. And so if you can, so the district court concluded that it was non-discretionary because CBOE had rules against manipulation. CBOE does have rules against manipulation, but the devil is really in the details. It's one thing to have a rule against manipulation. It's another thing to decide when and to what extent to investigate and enforce it, and which facts are sufficient to start an investigation. And if you agree with me on that, then I think it's very hard to say that plaintiffs adequately alleged bad faith. There's really not, you know, no plausible allegation of an ulterior motive in this case. At best, plaintiffs have alleged that their experts interpreted the relevant data differently from CBOE. That doesn't show the type of ulterior motive. The allegations of an ulterior motive, and this point bleeds over as well into the scienter allegations under the securities claim, the allegations of an ulterior motive really don't make sense. It's very hard to understand how plaintiffs, how excuse me, how CBOE had this motivation to commit this grand scheme of fraud. Wasn't it the plaintiff's theory that the board was profiting itself because these options, these derivatives became extremely popular and people were vastly expanding their trading activity on that facility? I mean, there's no allegation that CBOE was profiting from the manipulation in the same way of the manipulators. It's true that there's per trade profits, so I guess, you know, CBOE allegedly benefited from the allegedly manipulative trades to the same extent as other trades, but I don't think that that's enough to show an ulterior motive, especially when you kind of walk back and examine just what it is plaintiffs are saying. There's no allegation that CBOE fed information to the manipulators. The alleged defects in the VIX were known, were just in the publicly available formula known to all. So plaintiff's theory seems to be that CBOE had this grand plan to develop the settlement process, which had these subtle clues that would have, you know, caused manipulators to know that they could manipulate. But at the same time, CBOE also expected that the very sophisticated market participants who trade in these derivatives wouldn't have realized that and would also flock to these exchanges to be the unwitting victims of the manipulators. And apparently, CBOE also thought at the same time that it could get this past its two regulators because both the SEC and the CFTC concluded that the SOQ was, quote, not readily susceptible to manipulation and therefore approved it and issued an order approving it. So it's very hard to understand how CBOE could have had this very complicated grand plan that the SOQ fell into the sweet spot, was just susceptible enough to manipulation to attract these manipulators, but also just not susceptible enough to manipulation to gain the approval of its two regulators plus of all the other market participants. It just doesn't really make sense. And so absent any plausible, so if you can get past the discretionary versus non-discretionary issue on this issue, I think the district court is just incorrect. And plaintiffs have to show bad faith as that term is traditionally understood. I just don't think that there are plausible allegations of bad faith that get you past the fleeting threshold. We're certainly mindful that the PSLRA applies only to the securities claim, not to the commodities claim. But even under the lower standard of Iqbal and Twombly, I mean, Iqbal was a Rule 8 case where the Supreme Court held that there was, that the allegations of intent were too conclusory to state a claim. And I think that even under that basic standard, I don't think plaintiffs have adequately alleged bad faith. I see my time is very soon to expire, so I'm happy to take additional questions from the panel. If not, we'd ask the court to affirm. Thank you, Mr. Runacowski. Anything further, Mr. Brockett? Yes, I have two very quick points, Your Honor. I believe I have almost two minutes left. The first point is that counsel argued that we have no allegations in the complaint that the manipulation was against our interest. That is not correct. I'm going to cite paragraph 276 to 283 of the complaint where we specifically alleged that the manipulation on particular days was to our detriment. And I'm going to also cite paragraphs 249 to 255, where we even go further and give numerous examples of dates on which this occurred for numerous plaintiffs. And the other point I wish to make is to really to go back to this question of causation, whether the losses were caused by the regulatory failure. Our burden here is to allege plausibly proximate causation. It's not our burden to spell out with specifics what would have happened in a but-for world. We don't, for example, need to allege that specific enforcement action would have been taken against specific market actors. We need to allege that a serious, and we do allege that a serious and determined enforcement regime would have deterred, if not eliminated, the manipulation in the first place. CDOE could have done a number of things. It could have redesigned the process, or it could have put more cops on the street corner. And we know this is plausible because, as I said before, when FINRA started investigating, the behavior patterns changed. Thank you. Thank you very much. The case is taken under advisement.